Palmer, Appellant, *v.* Helm.
Stout, Appellant, *v.* Helm.

Argued May 2, 1966. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Edwin P. Rome,* with him *G. Thomas Miller, Goncer M. Krestal,* and *Blank, Rudenko, Klaus & Rome,* for appellants.

*Raymond Kleiman,* Deputy Attorney General, with him *Edwin W. Tompkins,* Deputy Attorney General, and *Walter E. Alessandroni,* Attorney General, for Commonwealth, appellee.

ORDER PER CURIAM [in appeals 1 and 2], May 4, 1966:

Appeal quashed.

ORDER PER CURIAM [in appeals 3 and 4], May 4, 1966:

Order affirmed.

Mr. Justice COHEN dissents.

---

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

The decision of the Court in these cases, denying two present Judges of the Commonwealth the right to appear as candidates on the Republican ballot for the office of Judge of the Superior Court constitutes, in my view, a deprivation of the constitutional prerogative of unhampered candidature. Although the majority of this Court has filed no opinion explaining its action, that action violates not only the Constitution and the laws of the Commonwealth, but the fundamental rules of fairness prevailing throughout the United States in the matter of assuring every citizen the opportunity to present himself as a candidate for any office for which he possesses the requisite qualifications.

On March 8, 1966 at approximately 12:30 p.m., there were filed in the office of the Bureau of Elections in Harrisburg, nomination petitions on behalf of Judges Juanita Kidd Stout and Clinton Budd Palmer for candidacy on the Republican Party Ballot for the office of Judge of the Superior Court. Three hours later there were filed in the same office in behalf of the same Judges, more nominating petitions to be added to the petitions already filed. It was discovered later that the original petitions filed in the names of these candidates, did not contain enough properly authenticated signatures to meet the minimum requirements. The candidates then asked that the supplemental petitions be added to the original petitions to make up the de-

ficiencies. The Bureau of Elections ruled that the sup plemental petitions could not be added because they were not bound to the original petitions. Judges Stout and Palmer petitioned the Court of Dauphin County for a Writ of Mandamus to compel the Bureau of Elections to accept the supplemental petitions which, it is not disputed, would, if added to those already filed, qualify the candidates for nomination on the Republican ticket. The court denied the relief prayed for and this Court has affirmed that denial.

It is almost incredible that in this advanced state of common sense interpretations of technical formalisms of the law, a fundamental privilege of citizenship is denied because a "t" is not crossed or an "i" not dotted. Section 909 of the Election Code provides that "if more than one sheet is used they shall be bound together when offered for filing." The court below ruled that since the supplemental petitions filed at 3:30 p.m. were not physically attached to the petition filed at 12:30 p.m., the statutory requirement had not been met. What is meant by "bound"? If the papers were physically in the office of the Bureau, and if they carried the proper headings, which is not denied, why should they not be considered as one entity? The statute does not compel that the papers be physically connected by means of staples, rivets, rope, cable or red tape. It is enough if they can be intelligently assembled in one package or bundle. In *Ross Nomination Petition,* 411 Pa. 45, 48, this Court said: "The Election Code must be liberally construed so as not to deprive an individual of his right to run for office or the voters of their right to elect a candidate of their choice," and then quoted with approval the provisions of §977 of the Election Code (25 P.S. 2937) permitting the amendment of: ". . . material errors or defects apparent on the face of the nomination petition . . . or on the face of the accompanying . . . affidavits."

The lower court held that the Secretary of the Commonwealth could not be mandamused to add the supplemental petitions to the original petitions because this would involve a discretionary act, and not merely a ministerial one. But wherein was any discretion to be exercised? The supplemental petitions, when handed to a clerk in the Bureau of Elections were placed by that clerk in a bin specifically set aside in the Election Bureau for additional sheets received after the original papers had been received. Taking the supplemental petitions out of the bin and attaching them to the original papers would not require any more discretion than taking apples out of a bin and placing them in another bin, or displaying them in a shop window.

If the additional papers had been filed in a different building, a different office and on a different day, I can understand the possibility of error in attempting to join them later, geographically and chronologically, but when the second papers were deposited in the same identical office within three hours after the first papers, it is absurd to say that in an office with the slightest competence, those papers could not be properly assembled and dutifully recorded.

In *Steel Nomination Petition,* 377 Pa. 260, this Court allowed the joining of original and supplemental papers in a situation dissimilar from the circumstances in this case in only one unimportant particular. There, the Secretary, upon receiving the additional sheet of signatures, said: "I'll take that and attach it to the petition."

In the case at bar the clerk in the Bureau of Elections accepted the supplemental papers without making any comment. The only difference then between the *Steel* case and the present one is that the functionary in the *Steel* case was courteous, cooperative and zealous in the performance of his duty. In this case the clerk was silent and perhaps indifferent. The clerk accepted

the papers and offered no comment. Is a citizen then to be denied the right of candidacy because a clerk perhaps entertains an ingrown antipathy to all mankind, or possibly cherishes a private contempt for those who help to pay his salary or who perhaps has his mind on things far away?

Mr. Andrew M. Bradley of the Democratic State Committee, who filed the supplemental petitions, testified that he specifically requested the clerk on duty to add them to those already filed. The clerk took the papers but was sphinxlike about it. Are Judges Stout and Palmer to be denied their constitutional rights because of a clerk who sheds his taciturnity on the desert air of bureaucracy? Are the sands of technicality to choke off the life-giving ozone of civic rights?

The statute in controversy does not state that the nominating papers must be bound together with hoops of steel. Togetherness here means neighborliness within the periphery of practicality and pragmatism. The lower court cited the *Steel* case against the appellants. In reality it supports the position of Judges Stout and Palmer. We approved there what Judge KREIDER of the court of Dauphin County said, namely, ". . . In our opinion the latter petition or sheets when received became an integral part of the nomination petition of the Respondent-Candidate because he already had filed a presumptively valid nomination petition and it must be considered a part thereof in determining the objections raised. To hold otherwise would defeat the expressed intent of electors of the Forty-second Senatorial District of this Commonwealth on a mere technicality of office procedure in processing petitions.

"A nomination petition by its very nature consists of several papers. Since upon its acceptance and filing in the office of the Secretary of the Commonwealth, it is prima facie valid, we believe the signature of duly registered and qualified electors appearing on papers

or petitions in the form prescribed by law and presented thereafter, but before the time for filing expires, must be incorporated with and considered as part of the nomination petition, and not as mere 'surplusage'. . . ."

Although the clerk in the case at bar did not enthusiastically receive the supplemental petitions, although there was no backslapping welcoming of the additional papers, there was at least no attempt to discard or disregard them, there was no suspicious glance toward the waste paper basket. In fact, as already stated, the papers actually did find lodgment in the fateful bin of expectancy. There they were allowed to die, according to the court below, and the affirmance of this Court, because no one thought of looking into the bin to take care of unfinished business.

Justice is pictured as blindfolded but the bandage should be lifted so that she can see what is happening when two members of the Temple of Justice are being denied the right to appear on the ballots of all the people, thereby assuring an idealistic further projection of the idealistic concept of a non-partisan judiciary.

The decision in this case strains at the gnat of technicality and swallows the camel of constitutional deprivation.

I dissent.